UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| CLIMATE INVESTIGATIONS CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 16-cv-00124 (APM) |
| UNITED STATES DEPARTMENT OF ENERGY, | ) ) ) ) | |
| Defendant. | ) ) ) | |

### MEMORANDUM OPINION

**I.**

The parties in this long-running Freedom of Information Act (FOIA) dispute are before the court for their *fifth round* of summary judgment briefing. Def.'s Third Renewed Mot. for Summ. J., ECF No. 72 [hereinafter Def.'s Mot.]; Pl.'s Cross-Mot. for Summ. J., ECF No. 73 [hereinafter Pl.'s Mot.]. This iteration centers on issues arising out of the court's December 6, 2019 Order requiring Defendant U.S. Department of Energy ("DOE") to conduct a supplemental search of the agency's Office of the Secretary for additional, non-duplicative responsive records. *Climate Investigations Ctr. v. U.S. Dep't of Energy* (*Climate Investigations III*), No. 16-cv-124 (APM), 2019 WL 6683751 (D.D.C. Dec. 6, 2019). Plaintiff Climate Investigations Center challenges (1) the adequacy of the supplemental search, (2) DOE's partial or entire withholding of nine records under Exemption 5 pursuant to the deliberative process privilege, and (3) whether DOE has met the FOIA Improvement Act's "foreseeable harm standard" as to eight of the nine challenged records.

The court takes up these issues in that order. As with the last round of cross-motions for summary judgment, the court presumes familiarity with the facts of this case as set forth in its previous opinions[1] and therefore discusses them only as necessary to address the outstanding issues raised by the parties. For the reasons that follow, the parties' cross-motions for summary judgment are granted in part and denied in part.

## II.

### A.

An agency in a FOIA case must show that it conducted an adequate search. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001). An adequate search is one that is "reasonably calculated to uncover all relevant documents." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency bears the burden of proving that it performed such a search, and it may rely on sworn affidavits or declarations to do so. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The court may grant summary judgment to the agency based on this evidence if it is reasonably specific and contradicted by neither record evidence "nor . . . evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 181–82 (D.D.C. 2011). A plaintiff can rebut an agency's supporting affidavits and declarations by demonstrating, with "specific facts," that there remains a genuine issue as to whether the agency performed an adequate search for documents responsive to the plaintiff's request. *See Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989)). Agency affidavits and declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."

---

[1] *See Climate Investigations Ctr. v. U.S. Dep't of Energy* (*Climate Investigations I*), No. 16-cv-124 (APM), 2017 WL 4004417 (D.D.C. Sept. 11, 2017), at *1–3.

2

*Shapiro v. U.S. Dep't of Just.*, No. 20-5318, 2022 WL 2760812, at *3 (D.C. Cir. July 15, 2022) (internal quotation marks omitted).

**B.**

In the court's last memorandum opinion, it ordered DOE to conduct a search of the Office of the Secretary for additional, non-duplicative responsive records. *Climate Investigations III*, 2019 WL 6683751, at *5. To establish the adequacy of that search, DOE offers the Third Supplemental Declaration of Alexander C. Morris, a FOIA Officer at DOE. *See* Def.'s Mot., Ex. 2, ECF No. 72-3 [hereinafter Suppl. Morris Decl.]. Morris states that DOE looked for responsive records in hard copy, archived, and the electronic files of 22 custodians, consisting of former Secretaries, Deputy Secretaries, Chiefs of Staff, and Deputy Chiefs of Staff. *Id.* ¶ 14. Morris further explains that DOE used search terms that the court previously found to be reasonable. *Id.* And he notes that DOE conducted an additional search for electronic records across the same custodians using two specific search terms requested by Plaintiff. *Id.* ¶ 15.

Still, Plaintiff says that DOE's search was not adequate. Plaintiff first faults DOE for what it describes as "irregularities" in the production. Pl.'s Mot., Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot., ECF No. 73-1 [hereinafter Pl.'s Mem.], at 11–12. These include receiving several duplicate documents from past productions in the most recent productions, not receiving a missing attachment to a responsive email from DOE's April 2021 production, and failing to produce a letter originally authored by Southern Company and sent to DOE. *Id.* at 12, 14–15. But these so-called "irregularities" do not demonstrate an inadequate search. "[T]he adequacy of a search is determined not by the fruits of the search, but by the appropriateness of its methods." *See Reps. Comm. for Freedom of Press v. FBI* (*Reps. Comm. I*), 877 F.3d 399, 408 (D.C. Cir. 2017) (internal quotation marks and alterations omitted). Plaintiff does no more than attack the search's output,

3

not the methods employed to conduct it. A "small collection of . . . technical failings" are not indicative of an inadequate search. *SafeCard Servs.*, 926 F.2d at 1202.

Plaintiff also claims that, based on the records produced, DOE did not search for records from the "desk of the Secretary." Pl.'s Mem. at 13. However, as DOE points out, the supplemental *Vaughn* index contains multiple emails from then-Secretary Steven Chu. *See* Def.'s Mot., Ex. 4, ECF No. 72-4 [hereinafter Suppl. Index], at 84, 98, 118. Plaintiff's mere speculation that more records should exist does not create a genuine dispute of fact that the search was inadequate. Suppl. Morris Decl. ¶ 14; *see also Shapiro*, 2022 WL 2760812, at *3.

Plaintiff further asserts that DOE failed to adequately follow up on leads that arose during the search. Pl.'s Mem. at 14–15. Specifically, Plaintiff argues that the failure of the search to turn up responsive records that would "logically be created around key meetings concerning the future of the Kemper coal plant" suggests that Defendant was required to alter its search parameters or otherwise take additional steps to locate them. *Id.* at 14. Plaintiff is correct that DOE cannot bury its head in the sand and must "follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). Once again, however, Plaintiff's speculation and dissatisfaction with the records produced is inadequate to undermine the adequacy of DOE's search. It has failed to show that DOE ignored a lead that was "both clear and certain" and "so apparent that the [agency could not] in good faith fail to pursue it." *Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) (internal quotation marks omitted).

For these reasons, the court grants Defendant's motion for summary judgment as to the adequacy of its supplemental search of the Office of the Secretary.

III.

A.

Next, Plaintiff argues that nine records have been improperly withheld or redacted under Exemption 5. An agency bears the burden of showing that it properly withheld materials pursuant to a statutory exemption. *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.D.C. 2014). An agency may meet its burden "by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate." *Brennan Ctr. for Just. v. U.S. Dep't of State*, 296 F. Supp. 3d 73, 80 (D.D.C. 2017). "If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011) (internal quotation marks omitted).

B.

1.

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "protect[s] the decision making processes of government agencies," including "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks omitted); *see also Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008). The exemption is

5

intended to "improve[] agency decisionmaking" by "encourag[ing] candor" and "blunt[ing] the chilling effect that accompanies the prospect of disclosure." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

For the deliberative-process privilege to apply, a document must be both "predecisional" and "deliberative." *Id.* at 785–86; *see also Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Material is "predecisional" if "it was generated before the adoption of an agency policy," and it is "deliberative" if "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The D.C. Circuit recently underscored the type of information that an agency must provide to justify an Exemption 5 withholding. The agency should endeavor to identify:

> the "who," i.e., the roles of the document drafters and the recipients and their places in the chain of command; the "what," i.e., the nature of the withheld content; the "where," i.e., the stage within the broader deliberative process in which the withheld material operates; and the "how," i.e., the way in which the withheld material facilitated agency deliberations.

*Jud. Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49, 56 (D.C. Cir. 2021). The court did not say that all of these details are prerequisite to substantiate an Exemption 5 withholding. However, an agency must at least provide enough detail for the court to evaluate (1) the deliberative process involved and (2) the nature of the decisionmaking authority vested in the person issuing the disputed record or that person's position in the chain of command. *See id.*

2.

Before turning to the records, the court notes that, among its justifications, DOE emphasizes that "five of the documents contain drafts," three of which are draft talking points. Def.'s Reply in Supp. of Def.'s Mot & in Opp'n to Pl.'s Mot., ECF No. 76, at 9–10. Drafts are not, however, per se exempt from FOIA disclosure. *Jud. Watch*, 20 F.4th at 55–56;

6

see also *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786 ("That is not to say that the label 'draft' [in the context of the deliberative process privilege] is determinative."). The agency still must identify the "deliberative component." *Reps. Comm. for Freedom of the Press v. FBI* (*Reps. Comm. II*), 3 F.4th 350, 367 (D.C. Cir. 2021). Thus, while the draft status of a record is relevant to the Exemption 5 inquiry, it is not dispositive.

The nine disputed records as identified in DOE's *Vaughn* index are as follows: (1)–(3) May 21, 2020 Production Docs 2, 6, and 7; (4)–(5) September 30, 2020 Production Docs 7 and 9; (6) November 25, 2020 Doc 1; (7) December 31, 2020 Doc 1; (8) February 25, 2021 Doc 1; and (9) April 5, 2021 Doc 15. *See* Suppl. Index at 2–3, 4–7, 74–75, 78–80, 121–23, 128–34, 138–42, 171–74; Pl.'s Mem. at 16, 20. Plaintiff objects to these withholdings on two principal grounds: (1) that the "decisions" cited by DOE for a number of the challenged documents do not closely relate to an agency decision for purposes of Exemption 5, and instead the agency is improperly relying on a "wide 'umbrella' decision" process "as a catch-all" to responsive material, and (2) that portions of the withheld or redacted documents contain segregable factual information that must be disclosed. Pl.'s Mem. at 18–20. Plaintiff's objections are well taken as to some but not all records.

1. *May 21, 2020 Production Doc 2*. DOE's justification for withholding this record is lacking. Although the *Vaughn* entry identifies the author and recipient of the email, *see* Suppl. Index at 2–3, the agency fails to explain the employees' places in the decisionmaking chain. The entry also lacks detail about the deliberative process involved. It says only that the discussion concerned "coal projects with tax credits" and apparently reflects "opinions and projections" from the Treasury Department "as to the status of the coal projects before the government reached any

7

final decisions about the coal projects." *Id.* at 2. That description does not tell the court what deliberative process is involved or how the record relates to that deliberative process.

  2. *May 21, 2020 Production Doc 6.* DOE has met its burden with respect to this record. It is an email concerning "potential talking points to be created before a meeting between the Secretary of Energy, Southern Company, and Governor [Haley] Barbour" concerning "a path forward for Southern's IGCC plant . . . and before DOE reached the final decision about where to move the IGCC plant in May 2008." Suppl. Index at 4. Courts in this District consistently have held that proposed or draft talking points or briefing materials in advance of high-level meetings involving agency leadership qualify for Exemption 5 protection. *See, e.g.*, *Khatchadourian v. Def. Intel. Agency,* No. 16-cv-311 (RCL)*,* 2022 WL 971206, at *13 (D.D.C. Mar. 31, 2022) (finding "talking points created for internal briefing meetings" protected); *Advancement Project v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 140 (D.D.C. 2021) (holding that "proposed talking points for a meeting between ICE Leadership and the Acting Secretary of Homeland Security" were protected (internal quotation marks omitted)); *Ctr. for Biological Diversity v. EPA*, 369 F. Supp. 3d 1, 23–25 (D.D.C. 2019) (holding that "informal paper for EPA staff to prepare for a meeting," "internal annotated agenda for a briefing of the Assistant Administrator," "talking points and background for EPA staff to prepare for a meeting," and "internal status report for a briefing of the Assistant Administrator" were protected (internal quotation marks omitted)). Plaintiff protests that a "meeting" with a third party is not an agency decision. Pl.'s Mem. at 18. But that misconstrues the nature of the relevant decision. The decision is "where to move the IGCC plant." The record is therefore privileged. *See Khatchadourian*, 2022 WL 971206, at *13.

  3. *May 21, 2020 Production Doc 7.* This record reflects a discussion of "potential talking points" in advance of a phone call between the Secretary, Southern Company, and

Governor Barbour that pertained to the agency's decision on "whether to approve the relocation of the Kemper plant." Suppl. Index at 6. DOE's withholding of this record was proper for the same reasons as the one immediately above. *See Ecological Rts. Found. v. EPA*, No. 19-cv-980 (BAH), 2021 WL 535725, at *15 & n.8 (D.D.C. Feb. 13, 2021) ("At least two circuits, and the overwhelming majority of Judges on this Court, have thus concluded that an agency's consideration of what information to present to external parties and how to present it is a decision in itself, distinct from the underlying policy decision that is the subject of any anticipated communication, and thus can qualify a record of such consideration for exemption under the deliberative process privilege.") (citing cases), *vacated in part by reconsideration on other grounds*, 541 F. Supp. 3d 34 (D.D.C. 2021).

Plaintiff expresses skepticism of DOE's description of this record as "talking points" because it appears as "answers to factual questions." Pl.'s Mem. at 19. But this format, by itself, does not defeat the deliberative-process privilege. *See, e.g.*, *Husch Blackwell LLP v. U.S. EPA*, 442 F. Supp. 3d 114, 122 (D.D.C. 2020) (holding that "draft question and answer responses" in preparation for the public release of information were protected by Exemption 5); *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 18 (D.D.C. 2004) (finding "draft questions and answers" covered by the deliberative process privilege). Also, as to Plaintiff's suggestion that the record improperly withholds facts, the *Vaughn* index states that the record's factual information "is inextricably intertwined with deliberative content." Suppl. Index at 7. Plaintiff offers no reason to upset the good faith presumption afforded that representation.

4. *September 30, 2020 Production Doc 7.* This record is an inter-agency communication between DOE and the Office of Management and Budget ("OMB"). Suppl. Index. at 74–75. The withheld email and attachment "contain opinions and projected goals for various

CCS [Carbon Capture and Sequestration] projects to be shared with DOE and OMB before the agencies reached a final decision on the CCS program." *Id.* at 74. The *Vaughn* entry, however, identifies neither the "final decision" that the agencies are seeking to reach "on the CCS program" nor does it say how the "opinions and projected goals" factor into that decision. The ambiguity is exacerbated by the fact that the date of the email is June 2, 2010, which post-dates the decision as to the Kemper plant's relocation, according to other DOE entries, by more than two years. *See* Suppl. Index at 4 (May 2008); *id.* at 6 (April 2008).[2] Also, the failure to explain who the primary actors are on the email and what role they played in the decisionmaking process renders the court unable to assess the deliberative nature of the communication. As a result, the agency's description of this document is inadequate to sustain the Exemption 5 invocation.

    5.     *September 30, 2020 Production Doc 9.* This record is an email, dated May 10, 2010, between DOE employees discussing "potential information to be included and different options for the call before the meeting with Commissioner Betz and before DOE reached the final decision about the Kemper project." Suppl. Index. at 78–80. This entry provides greater detail than the last one, though it is still not quite clear what "decision about the Kemper project" is at issue or how the call related to that decision. Nevertheless, because the information "reflect[s] the agency's thought process in formulating its public statements" with a third party, the court thinks the agency's description is adequate. *Avila v. U.S. Dep't of State*, No. 17-cv-2685 (RC), 2022 WL 2104483, at *12 (D.D.C. June 10, 2022) (affirming application of Exemption 5 to various briefing and talking points materials before meetings with outside third parties); *Ecological Rts. Found.*, 2021 WL 535725, at *15.

---

[2] This is not to say that a communication that post-dates an agency decision cannot still be protected by Exemption 5. *See, e.g., Campaign Legal Ctr. v. Dep't of Just.*, 34 F. 4th 14, 24 (D.C. Cir. 2022). But DOE has not made the case to justify such treatment here.

6. *November 25, 2020 Production Doc 1*. This is an email of "employees discussing and editing draft talking points prepared for a meeting between the Secretary, Governor Barbour, and Southern Company" about "potential site outcomes regarding a decision to move the site of Southern's IGCC plant from Orlando, Florida to alternative sites, including Kemper County, Mississippi, before DOE reached [a] final decision about where to move Southern's IGCC plant in May 2008." Suppl. Index at 121–22. This record is protected for the same reasons as the talking points email discussed in Paragraph 2, *supra*.

7–8. *December 31, 2020 Production Doc 1 & February 25, 2021 Production Doc 1*. The court takes up these two records in tandem because of their similarity. Suppl. Index at 128–34; *id*. at 138–42. Each is an email and attachments from Kevin Samy to Secretary Chu (and copied to a group of others) from May 2010. The records cover a host of topics in addition to the subject matter of Plaintiff's FOIA request. As relevant here, the first email includes "a draft proposed response for a call with Southern Company," *id*. at 129, and the second email includes "a draft response to a request from Southern Company," *id*. at 138. These descriptions are lacking to support an Exemption 5 withholding. Though these are communications to the Secretary, the *Vaughn* index nowhere describes what role the drafts played in the deliberative process. The drafts might relate to a matter of policy, but from the scant description contained in the *Vaughn* index the court has no way of knowing. DOE shall produce the responsive information from these emails.

9. *April 5, 2021 Production Doc. 15*. The last of the nine records is a "[b]riefing memorandum prepared for the Secretary in advance of an Interagency Task Force on CCS public meeting" that "synthesizes opinions and recommendations from DOE employees suggesting topics for the Secretary in the meeting and draft talking points prepared before the Secretary attended the

CCS meeting." *Id.* at 171. For reasons already discussed, the "briefing memorandum" is protected under Exemption 5. *See Avila*, 2022 WL 2104483, at *12.

## IV.

### A.

Finally, Plaintiff argues that DOE's withholding of eight of the nine foregoing records does not meet the "foreseeable harm" standard set out in the FOIA Improvement Act.[3] Pl.'s Mem. at 21–22. Under the FOIA Improvement Act of 2016, agencies must release a record, even if it falls within a FOIA exemption, unless "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "[T]he foreseeable harm requirement imposes an independent and meaningful burden on agencies," *Reps. Comm. II*, 3 F.4th at 369 (internal quotation marks and alterations omitted), that cannot be satisfied with "generalized assertions." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (internal question marks omitted). To satisfy its burden under the FOIA Improvement Act, "an agency must identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information withheld." *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020) (internal quotation marks omitted). Mere speculation about potential harm or boilerplate justifications are insufficient. *See Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019).

### B.

For those withholdings sufficiently justified by DOE, the agency has identified the specific information at issue and concluded that disclosure would "chill future internal discussion."

---

[3] Plaintiff does not challenge April 2021 Doc 15 under this standard. *See* Pl.'s Reply in Supp. of Pl.'s Mot. & Opp'n to Def.'s Mot., ECF No. 78, at 10.

*See generally* Suppl. Index. That representation is in line with what the D.C. Circuit has found to be satisfactory under the foreseeable harm standard and is not, contrary to Plaintiff's assertion, significantly more speculative or vague. *Machado Amadis*, 971 F.3d at 371; *see also Nat'l Immigr. Project of Nat'l Laws. Guild v. ICE*, No. 17-cv-2448 (APM), 2020 WL 5798429, at *5 (D.D.C. Sept. 29, 2020) (finding a FOIA officer's declaration dismissed by the plaintiff as "mere boiler plate" to be satisfactory under *Machado Amadis* (internal quotation mark omitted)).

The D.C. Circuit's recent decision in *Reporters Committee II* is distinguishable. There, "[t]he FBI's broad assertion of foreseeable harm" "was contained in just two umbrella paragraphs that purported to sweepingly address *all* of the deliberative information in the case." 3 F.4th at 367 (internal quotation marks omitted). Here, in contrast, DOE articulated the foreseeable harm for each document withheld or redacted and tied it to the specific document or decision at issue. *See, e.g.*, Suppl. Index at 122 (stating as to November 25, 2020 Production Doc 1, "[r]elease of these draft talking points would reveal potential site outcomes that did not ultimately form part of the agency's final decision and would compromise the deliberative process by which DOE makes its decisions"). "Plaintiff[] undoubtedly would prefer [DOE] to have provided more specifics, but [t]he degree of detail necessary to substantiate a claim of foreseeable harm is context-specific." *Nat'l Immigr. Project*, 2020 WL 5798429, at *5 (internal quotation marks omitted). Based on the nature of the documents and the decision-making process at issue, the court finds that the agency has satisfied its burden under the statute.[4]

---

[4] Defendant's Supplemental Declaration specifically attests to a two-stage, line-by-line segregability review of the withheld information. Suppl. Morris Decl. ¶¶ 19–25. DOE has met its burden as to factually segregable information. *See Loving*, 550 F.3d at 41; *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776–77 (D.C. Cir. 2002).

13

## V.

For the foregoing reasons, the court grants in part and denies in part Defendant's Third Renewed Motion for Summary Judgment, ECF No. 72, and grants in part and denies in part Plaintiff's Cross-Motion for Summary Judgment, ECF No. 73.  DOE shall disclose to Plaintiff information withheld as to the following entries in the *Vaughn* index:

1. May 21, 2020 Production Doc 2;
2. September 30, 2020 Production Doc 7;
3. December 31, 2020 Production Doc 1 (as to responsive material only); and,
4. February 25, 2021 Production Doc 1 (as to responsive material only).

A final, appealable order accompanies this Memorandum Opinion.

Dated: August 11, 2022

Amit P. Mehta
United States District Judge